IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| INTERMOUNTAIN IRONWORKERS PENSION FUND; INTERMOUNTAIN IRONWORKERS TAX DEFERRAL FUND; IRONWORKERS INTERMOUNTAIN HEALTH & WELFARE FUND; LILLIAN SANTILLANES; TOM MOEN, JR.; DEREK BAMBERRY; RYAN SMITH; MARK MUNDY; ANDREW CHANCE; JEFFERY STEELE; DOUG THOMAS; DAVID LLOYD; JAMES WONNACOTT; PAUL SANCHEZ; BOB GROTHE; MARK CALKINS; BRIAN RIGBY; DICK DEVRIES; MELVIN CROMWELL; and LOCAL UNION 732 OF THE INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTUAL, ORNAMENTAL AND REINFORCING IRON WORKERS, <br><br>              Plaintiffs, <br><br>vs. <br><br>MADISON RIVER CONTRACTORS, a Montana Limited Liability Company, <br><br>              Defendant. | CV 24-193-BU-SPW <br><br><br>ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

Before the Court is Plaintiffs' Motion for Summary Judgment. (Doc. 17). Defendant Madison River Contractors, LLC opposes the Motion. (Doc. 23). For the following reasons, the Court grants Plaintiffs' Motion. The Court finds that Plaintiffs are entitled to unpaid contributions, interest, and liquidated damages as a matter of law. The Court further finds that Plaintiffs are entitled to reasonable attorney's fees and costs, the amount of which shall be determined following further proceedings before this Court.

## I.   Background

Plaintiffs Intermountain Ironworkers Pension Fund, Intermountain Ironworkers Tax Deferral Fund, and Ironworkers Intermountain Health & Welfare Fund (collectively, the "Trust Funds") are multiemployer benefit plans established under the Employee Retirement Income Security Act of 1974 ("ERISA") and the National Labor Relations Act ("NLRA"). (Doc. 19 at 2). These plans arise from collective bargaining agreements between participating employers and Plaintiff Local Union 732 of the International Association of Bridge, Structural, Ornamental and Reinforcing Workers ("Local 732"). (Doc. 23 at 2).

On November 15, 2022, Local 732 and Defendant executed a Compliance Agreement. (Doc. 20-1 at 2). Under that Agreement, Defendant agreed that, upon delinquency, it would be liable for audit fees, interest, liquidated damages, court costs, and attorney's fees. (*Id.*). The Compliance Agreement incorporated the

2

provisions of a Labor Agreement and three Trust Agreements, and further required Defendant to comply with any amendments or extensions of these agreements. (*Id.*).

The first incorporated agreement was Local 732's Labor Agreement[1] with the Idaho Steel Erectors and Placers Association and the Montana Steel Erectors and Contractors Association, a multiemployer bargaining group. (*Id.*). Defendant agreed to abide by provisions governing wages and fringe benefits. (*Id.*). Participating employers—including Defendant—were required to contribute to each Trust Fund for every hour of covered work performed by Local 732 members. (Doc. 20-5 at 13–15; Doc. 20-6 at 14–16). Like the Compliance Agreement, the Labor Agreement imposed liability on delinquent employers for "assessments, service fees, audit fees, liquidated damages, interest, court costs and attorney's fees." (Doc. 20-5 at 13; Doc. 20-6 at 14).

The next incorporated agreements were the Trust Agreements governing the administration of the Trust Funds. (Doc. 20-1 at 2). Each Trust Agreement contained substantially identical provisions governing employer contributions to the Trust Funds. (Doc. 20-2 at 16–20; Doc. 20-3 at 16–19; Doc. 20-4 at 15–19). Contributions were due on the 20th day of each month, with interest accruing at a

---

[1] References to "Labor Agreement" collectively denote two separate but substantively identical agreements. During the period relevant to this Motion, two agreements were in effect: one covering June 1, 2023 through May 31, 2024 (Doc. 20-5), and another covering June 1, 2024 through May 31, 2025 (Doc. 20-6).

3

rate of 12 percent per year if payment was not made within five days of the due date. (Doc. 20-2 at 16–18; Doc. 20-3 at 16–18; Doc. 20-4 at 15–18). The Trust Agreements also imposed liquidated damages equal to 20 percent of unpaid contributions, plus attorney's fees and collection costs. (Doc. 20-2 at 17–18; Doc. 20-3 at 17–18; Doc. 20-4 at 17–18).

As a participating employer, Defendant was obligated to report and remit contributions and dues. (Doc. 18 at 3). Between November 2023 and September 2024, Defendant submitted monthly reports to the Trust Funds acknowledging contributions totaling $156,734.04 but failed to remit payment. (*Id.* at 5–6).

On May 21, 2024, Defendant remitted two checks totaling $76,000. (*Id.* at 7). On October 23, 2024, Langlas & Associates, a general contractor for whom Defendant was performing work, issued a joint check for $10,100.65. (*Id.* at 8; Doc. 20-21 at 2). Plaintiffs applied these funds to the delinquent contributions pursuant to collections policies and deducted amounts owed to smaller funds established under the Labor Agreement—such as apprenticeship, industry, and international programs—that are not parties to this action. (Doc. 19 at 6–7; Doc. 18 at 7).

After these calculations, Plaintiffs determined that Defendant remains liable for $67,048.85 in contributions to the Trust Funds. (Doc. 18 at 9). Plaintiffs brought this action to enforce their rights under the Compliance Agreement, the Labor Agreement, the Trust Agreements, and federal law. (Doc. 1 at 3).

Plaintiffs further seek $10,846.97 in interest, plus an additional $22.04 per day accruing after June 30, 2025, until payment is made. (Doc. 18 at 11). They also claim liquidated damages in the amount of $13,409.77 and request attorney's fees totaling $43,111.50. (*Id.* at 11–12; Doc. 24 at 11).

## II. Legal Standard

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(a) when the moving party demonstrates "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." A dispute is "genuine" if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it might affect the outcome of the case under the governing law. *Id.*

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet this burden, the movant must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show no genuine issue exists. *Id.* (quoting Fed. R. Civ. P. 56(c)(1)(A)). Once the movant has met this burden, the responsibility shifts to the nonmoving party to establish that a genuine issue of material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, a court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court must draw all inferences from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587.

## III. Discussion

As an initial matter, Local Rule 56.1(b) requires that "[a]ny party opposing a motion for summary judgment must file a Statement of Disputed Facts simultaneously with and separately from the response brief." Local Rule 56.1(d) further provides that, absent a joint stipulation, "[f]ailure to file a Statement of Disputed Facts will be deemed an admission that no material facts are in dispute."

Defendant filed no Statement of Disputed Facts with its response brief, nor after Plaintiffs raised the issue in their reply. (*See* Doc. 23; Doc. 24 at 6). In accordance with Local Rule 56.1(d), this omission is deemed an admission that no material facts are in dispute. Accordingly, in evaluating Plaintiffs' Motion, the Court treats Plaintiffs' asserted facts as true and undisputed.

The Court turns to the merits of the Motion. First, the Court concludes deferral of summary judgment is not warranted. Second, the Court concludes no genuine issue of material fact exists and summary judgment should be granted.

*A.    Deferral of Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 56(d), Defendant requests that the Court defer ruling on Plaintiffs' Motion, asserting that additional discovery is necessary to determine the amounts owed. (Doc. 23 at 2). Plaintiffs counter that Defendant's request is improper. (Doc. 24 at 4–8).

Rule 56(d) permits a court to defer ruling on a motion for summary judgment when the nonmovant demonstrates, by affidavit or declaration, that specific facts essential to opposing the motion are unavailable to it. Deferral is inappropriate, however, when the evidence sought is "the object of pure speculation." *California ex rel. Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). Whether to grant relief under Rule 56(d) is within the district court's discretion. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).

The party seeking deferral bears the burden of showing: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). In other words, the party "must make clear what information is sought and how it would preclude summary judgment." *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998) (citation omitted). Failure to comply with Rule 56(d)'s "requirements 'is a proper ground for denying discovery and

proceeding to summary judgment.'" *Fam. Home*, 525 F.3d at 827 (quoting *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986)).

Although courts generally grant Rule 56(d) motions "fairly freely" when summary judgment is sought early in litigation, relief is unavailable when the party has failed to "diligently . . . pursue discovery before summary judgment." *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Rsrv.*, 323 F.3d 767, 773 (9th Cir. 2003); *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 524 (9th Cir. 1989). In assessing diligence, courts consider the entire period up to the date of the ruling on summary judgment, not merely the time before the motion was filed. *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1335 (11th Cir. 2021).

Here, Defendant has not satisfied the requirements of Rule 56(d). First, Defendant submitted no affidavits or declarations in support of its request. (*See* Doc. 23). Second, Defendant has not demonstrated that the facts it seeks actually exist or that they are essential to opposing summary judgment. Instead, Defendant merely speculates that additional joint checks may exist beyond those disclosed by Plaintiffs, even though Plaintiffs have never suggested the existence of such checks. The request therefore rests on conjecture, unsupported by affidavit or documentary evidence indicating that undisclosed checks exist or that they would affect Defendant's liability.

8

Third, Defendant cannot credibly argue that the joint checks were "unavailable" to it. The joint checks were made payable to the Defendant and the Trust Funds. Plaintiffs then disclosed those checks in their initial disclosures in February and again in support of this Motion. (Doc. 24 at 10).

Finally, Defendant failed to act diligently in seeking discovery before summary judgment. The Court's March 27, 2025 scheduling order required discovery requests be served so that responses were due by August 29, 2025. (Doc. 16 at 5). Plaintiffs filed the present Motion on August 27, 2025—two days before discovery closed. Defendant did not serve its first and only discovery requests until August 25, 2025, just four days before the cutoff and five months after the Court set the deadline. Because Defendant failed to pursue discovery during the allotted period, the Court declines to grant additional time and proceeds to rule on Plaintiff's Motion.

### B.   *Summary Judgment*

There is no genuine dispute of material fact regarding Defendant's liability. ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. It further mandates that "[i]n any action under this subchapter by a fiduciary for or on behalf

of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan . . . the unpaid contributions." 29 U.S.C. § 1132(g)(2)(A).

Similarly, the NLRA authorizes that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a).

Here, Defendant "does not dispute that it owes Plaintiff[s] certain amounts" but asserts that it must independently verify the figures. (Doc. 23 at 2). Nevertheless, Defendant was expressly obligated to contribute to the Trust Funds pursuant to the Trust Agreements and the Labor Agreement, as incorporated in the Compliance Agreement. Each Trust Agreement required that "[e]ach Employer shall pay to the Fund such amounts as are set forth in the Written Agreement." (Doc. 20-2 at 16; Doc. 20-3 at 16; Doc. 20-4 at 16).

Between November 2023 and September 2024, Defendant submitted reports to the Trust Funds identifying the contributions owed. (Doc. 19 at 5–6). Despite filing those reports, Defendant failed to remit the corresponding payments and continues to withhold a substantial portion of the amounts due. (Doc. 18 at 3). Plaintiffs' requested relief is based directly on the reports Defendant itself submitted. (*Id.* at 15). Because Plaintiffs' factual assertions are deemed admitted, and the

10

amounts sought are derived from Defendant's own reporting, there is no genuine dispute as to either liability or the sums owed.

Accordingly, the Court concludes that Defendant has failed to remit contributions in accordance with its contractual obligations under the Trust Agreements and the Labor Agreement. Because no genuine issue of material fact exists, Plaintiffs are entitled to summary judgment with respect to the unpaid contributions.

As explained below, the Court further concludes that Plaintiffs are entitled to interest and liquidated damages as a matter of law. In addition, Plaintiffs are entitled to recover reasonable attorney's fees, the amount of which shall be determined at a subsequent hearing.

*1.     Interest*

The obligation to pay interest is both statutorily mandated and explicitly provided for in the Labor Agreement and the Trust Agreements. Under ERISA, when a judgment is entered in favor of a plan, "the court shall award the plan . . . interest on the unpaid contributions." 29 U.S.C. § 1132(g)(2)(B). The statute further specifies that "interest on unpaid contributions shall be determined by using the rate provided under the plan," if one is specified. *Id.* § 1132(g)(2).

Here, the Trust Agreements established an interest rate of 12 percent per year, beginning five days after the contributions' due date. (Doc. 20-2 at 16–18; Doc. 20-

3 at 16–18; Doc. 20-4 at 15–18). Defendant has not opposed the claim for interest. Therefore, the Court finds Plaintiffs are entitled to interest on the unpaid contributions as a matter of law.

### 2. *Liquidated Damages*

Liability for delinquent contributions under ERISA also includes "liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C)(ii); *see also Laborers Health & Welfare Tr. for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 546–47 (1988).

Here, the Trust Agreements provide for liquidated damages equal to 20 percent of the unpaid contributions. (Doc. 20-2 at 17–18; Doc. 20-3 at 17–18; Doc. 20-4 at 17–18). Defendant has not opposed the claim for liquidated damages. Therefore, the Court finds that Plaintiffs are entitled to recover liquidated damages as a matter of law.

### 3. *Attorney's Fees*

ERISA, together with established case law, mandates the award of "reasonable attorney's fees and costs of the action." 29 U.S.C. § 1132(g)(2)(D); *Laborers Health*, 484 U.S. at 547.

Plaintiffs request $43,111.50 in attorney's fees and costs. (Doc. 24 at 11). Defendant does not dispute that attorney's fees must be awarded but contests the

amount. (Doc. 23 at 4–7). Defendant objects to several time entries, including those related to coordinating with local counsel and drafting the Complaint. (*Id.*).

The Court agrees that Plaintiffs are entitled to recover reasonable attorney's fees pursuant to statute and case law. The precise amount of attorney's fees shall be determined following further proceedings before this Court.

IV. **Conclusion**

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment (Doc. 17) is GRANTED. The Court concludes that Plaintiffs are entitled to recover unpaid contributions, interest, and liquidated damages as a matter of law. Plaintiffs are further entitled to reasonable attorney's fees, the amount of which shall be determined following a hearing.

To facilitate the entry of judgment, Plaintiffs shall submit a proposed final judgment consistent with this Order within 14 days. Defendant may file any objections within 7 days thereafter. The proposed judgment shall be limited to unpaid contributions, interest, and liquidated damages.

DATED this 12th day of December, 2025.

SUSAN P. WATTERS
United States District Judge